(No. 27556.—

Wedron Silica Company *et al.*, Appellees, *vs.* Illinois Commerce Commission *et al.*— (Illinois Iowa Power Company, Appellant.)

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 16, 1944.*

LeForgee, Samuels & Miller, (Charles C. Le-Forgee, and Thomas W. Samuels, of counsel,) all of Decatur, for appellant.

Edward A. Leslie, of Glen Ellyn, and James Eugene Malone, of LaSalle, for appellees.

Mr. Justice Murphy delivered the opinion of the court:

Wedron Silica Company maintained a plant at Wedron, Illinois, where it mined silica ore. It purchased electrical energy to operate its plant from the Illinois Iowa Power Company. On December 14, 1940, the silica company filed a complaint with the Illinois Commerce Commission charging that it had paid the power company at an excessive and discriminatory rate. The power company answered, and, after a hearing of evidence, the commission found that the charges alleged in the complaint had not

been sustained, and dismissed the complaint. On a hearing in the circuit court of LaSalle county, the commission's order was set aside. The power company has appealed from such order direct to this court. The power company will be referred to as appellant and the silica company as appellee.

Appellant originated certain schedules of rates and sold electrical current under them with the sanction and approval of the commission. Those which were for industrial users and are frequently referred to in the record are Nos. 55, 92, 93, 95, 96, 97 and 97.1. Appellee was furnished electricity under schedule 92. Some of the others were introduced into the case by appellee in support of its claim that the rate it paid was excessive and discriminatory, and others were brought in by appellant to establish that the rate provided for in No. 92 was fair, reasonable, and not discriminatory.

Each of the several rate schedules mentioned has certain qualifying characteristics which distinguish it from the others and determine its availability to the various customers of appellant. - Some of such features are adaptability of the customer's facilities to the current furnished, amount of current, minimum payments, discount features and territorial restrictions. As to the latter feature, it appears that rate No. 92 has no territorial restriction. It was available to customers who could meet the other requirements of the rate, throughout that part of the State where appellant has its lines and facilities. It is designated as a standard industrial rate. Rate No. 55 was nonstandard and was available for use only in the city of Jacksonville. Rate No. 93 was of general availability as to territory but by reason of certain qualifying features it was used by only two customers, one located at DuQuoin, the other in LaSalle county. Rate No. 95 was special in character and available only in the city of Peru; No. 96 was limited in territory to Collinsville, East Alton, Ed-

wardsville, Granite City, Madison, and a few other communities in that part of the State. Rate No. 97 was available in Belleville, Collinsville, East Alton and Granite City, and rate No. 97.1 was available in Belleville and Granite City. It will be noted that certain territory had more than one available rate, thus customers in Belleville had a choice of three rates, Nos. 92, 97 and 97.1. In Granite City there was a choice of rates Nos. 92, 96, 97 and 97.1.

That part of the State in which appellant had its lines and equipment is divided by it into three divisions, *viz.:* northern, central and southern, but such designation is for operation purposes, only, and is not a rate division. Gordon Cavanagh, a rate engineer, who had been employed in such capacity by appellant for several years, testified that he designed all of the rate schedules of appellant. He stated that rates for industrial uses are ordinarily made on two principal factors, one covering the demand cost, and the other the energy cost, and that said factors were the same in all industrial rates that were available in either the northern or southern division. His evidence shows that other factors are considered in rate making and that some may be common to the whole territory served by appellant and to every rate schedule, while some rate schedules are designed on factors that are peculiar to certain localities. One of such factors was the element of competition, and he testified that in designing rates Nos. 97 and 97.1, he took into consideration the fact that the territory where such rates would be available was located near a field served by the Union Electric Company of Illinois, which had a low rate, and that the element of competition was a factor that was taken into consideration in fixing those rate schedules.

In its original complaint, appellee prayed that rate No. 92 be reduced so as to remove the excessive and discriminatory features. It did not ask that it be given the privilege of purchasing electrical current at the rates fixed

by schedules 97 or 97.1. In its motion for a rehearing before the commission, and on this appeal, it contends that it should be furnished electrical current at one of said rates, 97 or 97.1, and that, being deprived of such privilege, it is discriminated against. If the amount of current used by appellee during the year 1940 had been computed at rates fixed under 97 or 97.1, the amount due would have been less than that which appellee paid under rate 92.

The commission found that rates Nos. 96, 97 and 97.1 were designed to meet competition of the Union Electric Company in the areas for which they were made available, that rates fixed by said schedules are on substantially the same level as the rates charged by the Union Electric Company for similar service, and that to meet such competition by reduction of rates would result in serious loss to appellant. It further found that although rate schedules Nos. 96, 97 and 97.1 were not available to appellee at its Wedron plant, this would not of itself constitute an unjust discrimination, nor would the comparison of said rates with rate schedule No. 92 prove that appellee was paying an excessive rate. It also found that the evidence did not show "that conditions affecting the cost of producing and delivering energy in the two areas are the same; that is, it does not disclose comparable conditions as to investment, equipment, service facilities, load conditions, customers' saturation and other relevant factors."

The circuit court found that the evidence showed an unjust and unreasonable discrimination; that the rates established under schedules Nos. 96, 97 and 97.1 were kept in force for the purpose of meeting alleged competition with another privately owned public utility company operating in territory adjacent to a portion of the territory in which respondent (appellant) was operating; that said alleged competition does not afford a reasonable or lawful basis for such discrimination; and that the order

of the commission was against the manifest weight of the evidence. The judgment entered by the court set the order of the commission aside.

Appellant's rate engineer, called as a witness by appellee, testified that in designing all industrial rate schedules for appellant he took into consideration rate factors such as demand and energy charge, availability of the customer's facilities to the utility's equipment, the peak load, demand, and other factors, but he did not testify that the factors he employed in fixing the several schedules did not have a proper basis for the service it was designed to furnish or that when applied to rate No. 92 it created an excessive rate or one that was unjustly discriminatory. On the contrary, he stated that in his opinion none of the rates referred to contravene any established principle of rate making. There was no other evidence on this phase of the case.

Appellee calls attention to that part of the witness Cavanagh's evidence where he testified that when he designed rates Nos. 96, 97 and 97.1 he took into consideration that they were to be made available to communities where there was a competitor selling the same service, and that such rates were lowered to meet such competition. Such factor in itself does not prove that appellee was charged an excessive rate. If it had shown that the loss in reduced earnings from competitive fields led to higher rates in noncompetitive areas where it maintained its plant, it would have established a basis for the claim of excessiveness. There is no such evidence in the record.

We are convinced that the commission's finding that the evidence did not show that conditions affecting the cost of producing and delivering energy in the two areas are the same is well supported by the record. The evidence does not disclose comparable conditions in the two areas as to investment, equipment, service facilities, load conditions, customer saturation and other relevant factors.

Appellee contends that the difference in rates between schedule No. 92 and rates Nos. 96, 97 and 97.1 show an unjust discrimination. Section 38 of the Public Utilities Act provides: "No public utility shall establish or maintain any unreasonable difference as to rates or other charges, services, facilities, or in any other respect, either as between localities or as between classes of service." Ill. Rev. Stat. 1943, chap. 111⅔, par. 38.

The insufficiency of the evidence to prove appellee's claim of excessive charges applies with equal force to its claim that it has been unjustly discriminated against. An unjust discrimination is not proved by the mere comparison of the rate fixed by one schedule with the rate fixed by another. To afford a sufficient basis for comparison there must be evidence to show the difference in the conditions under which the rates were put in force.

There is a difference between the requirements prescribed by rate No. 92, and those necessary to obtain the service under rates No. 96, 97 and 97.1. The difference extends to the demand basis, the minimum charges as to who pays the cost of installing the substation and other such matters. Appellee offered no proof to show that it could qualify under schedules Nos. 96, 97 or 97.1. The commission's finding that there was no unjust discrimination proved is sustained by the evidence.

Appellee's complaint filed with the commission contained a prayer for reparations, but under the views expressed it is not necessary to give consideration to such contentions.

The judgment of the circuit court setting aside the order of the commission is reversed, and the order of the commission confirmed.

*Judgment reversed.*
*Order of commission confirmed.*